In re FIRST SOFTWARE
CORPORATION, Debtor.

CONVEYCO, INCORPORATED, Extended Technologies Corporation and Brodie, Inc., Plaintiffs,

v.

FIRST SOFTWARE
CORPORATION, Defendant.

Adv. No. 86–1121.
Bankruptcy No. 86–10560–JNG.

United States Bankruptcy Court,
D. Massachusetts.

April 13, 1987.

Nina M. Parker, Satran, Reade & Marino, Boston, Mass., for plaintiffs.

Andrew C. Griesinger, Choate, Hall & Stewart, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

On May 30, 1986, Conveyco, Incorporated ("Conveyco"), Extended Technologies Corporation ("Extended") and Brodie, Inc. ("Brodie") (collectively, the "plaintiffs") filed the instant adversary proceeding against First Software Corporation ("First Software" or the "Debtor"). The complaint contains three counts. In Count I, Conveyco alleges, *inter alia*, that the Debtor ordered a conveyor and rack system, a system purportedly essential to the Debtor's computerized conveyor and paperless retrieval system, from Conveyco on March 19, 1986; that on April 14, 1986, Conveyco began to install the system in a warehouse into which the Debtor had just moved; that Conveyco completed installation of the equipment ordered by First Software three days later and simultaneously demanded payment for the system from First Software; that on April 19, 1986, First Software filed a petition under Chapter 11 of the Bankruptcy Code; and that on that same day, Conveyco, by certified mail, sent a reclamation letter to the Debtor pursuant

to 11 U.S.C. § 546(c)(1).[1] Conveyco demands the return of the mechanical equipment conveyor and rack system and all other equipment which it delivered to the Debtor, or, in the alternative, it requests that it be granted a priority claim, pursuant to 11 U.S.C. § 503(b), in the amount of $200,039.15, or a lien pursuant to section 546(c)(2)(B).

Similarly, in Count II, Extended alleges that First Software, on or about August 23, 1985, ordered a Zip-Pick System, which includes computer hardware and software that was designed and programmed for use with Conveyco's rack and storage system and Brodie's reference rack system; that the computer hardware was shipped to First Software for warehousing and that delivery of the "package" was completed by April 8, 1986; that installation was completed on April 18, 1986 and that the system was checked out and accepted; and that on April 21, 1986, Extended sent two letters to First Software, one demanding a minimum payment of $36,853 and the other notifying the Debtor of its default and communicating an intent to proceed with reclamation.[2] Extended, in Count II, requests permission to recover its goods or, in the alternative, allowance of a priority claim, pursuant to 11 U.S.C. § 503(b), in the amount of $65,815.50 or a lien in that amount.

Brodie's allegations are set forth in Count III. It alleges that First Software executed equipment contracts for a reference rack system to be used in conjunction with the systems supplied by Conveyco and Extended on February 24, 1986; that delivery of the equipment took place in March and installation was substantially complet-

ed on April 18, 1986, one day before the filing of the bankruptcy petition; and that on April 25, 1986 it sent First Software, by certified mail, a demand for reclamation.[3] Like Conveyco and Extended, Brodie requests the return of its equipment. Alternatively, it seeks a priority claim, pursuant to 11 U.S.C. § 503(b), in the amount of $42,209.80 or a lien pursuant to section 546(c)(2)(B) of the Bankruptcy Code.

Notably, all three counts contain averments that the plaintiffs' equipment was delivered to the Debtor while the Debtor was insolvent. Additionally, the plaintiffs allege wrongful, fraudulent and deceitful conduct on the part of the Debtor, but they do not claim damages for that conduct apart from the value of the equipment delivered.

Because the summons was not issued until June 30, 1986, the Debtor did not respond to the plaintiffs' complaint until July 30, 1986. The Court conducted a pretrial conference on September 3, 1986, indicating that a trial date would be set after the completion of discovery. On January 16, 1987, the Debtor filed a Motion for Partial Summary Judgment, seeking dismissal of Counts II and III in full and dismissal of Count I in part. Specifically, the Debtor, in its motion, states that all three plaintiffs failed to notify it that they would reclaim their goods as required by 11 U.S.C. § 546(c)(1) within ten days after the goods (or nearly all of the goods) were received by the Debtor. Additionally, the Debtor asserts that the letters sent by Extended and Conveyco to the Debtor do not satisfy the content requirements of 11 U.S.C. § 546(c)(1) and, therefore, do not constitute proper reclamation demands.

---

**1.** The letter stated:
Conveyco, Inc. has completed and delivered to First Software Corp. a conveyor and order selection system on April 17, 1986. In view of the fact that First Software is unable to pay for the equipment and services rendered, we demand First Software Corp. grant Conveyco immediate permission to remove all mechanical and electrical equipment Conveyco supplied and installed.

**2.** That letter provides in relevant part:
We hereby serve notice that the contract issued on P.O. # S1134 on August 23, 1986 [sic] in the

amount of $109,500.00 and amended P.O. # WH1018 in the amount of $11,500.00 are in default. We will make every legal attempt to re-coop our hardware and services rendered to date, prior to proceeding with our installation.

**3.** The letter provides in relevant part:
Brodie, Inc., as seller, upon discovery that First Software, Inc., received goods and services on credit while insolvent, hereby reclaims said goods pursuant to Massachusetts Laws, Chapter 105, Section 2–702.

## DISCUSSION

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The United States Supreme Court has recently stated with respect to Fed.R.Civ.P. 56, which is made applicable to adversary proceedings by Bankruptcy Rule 7056, that:

> In our view, the plain language of Rule 56(c), mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. '[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)....' *Anderson v. Liberty Lobby, Inc.* — U.S. —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The Court will address the issue of the timeliness of the plaintiff's demand letters first. Section 546(c)(1) provides:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the

debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods *before ten days after receipt of such goods by the debtor;* and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secured such claim by a lien.

11 U.S.C. § 546(c)(1) (emphasis supplied).

Relying on the affidavit of its Director of Warehouse and Facilities Operations, Robert Ransom ("Ransom"), First Software asserts that there is no genuine issue of material fact with respect to the shipment and the receipt by the Debtor of virtually all of the plaintiffs' goods and equipment more than ten days before the mailing date of the demand letters of Conveyco, Extended and Brodie, which letters are dated April 19, 1986, April 21, 1986 and April 25, 1986, respectively. According to Ransom, the goods delivered by the plaintiffs, when installed, constitute a computerized and automated warehouse conveyor system. The system was to be used at First Software's new warehouse. First Software moved to the new warehouse on April 12 and April 13, 1986. In order that the conveyor system would be installed and operational by the time the Debtor moved, the plaintiffs shipped almost all of the components of the system well before April 12 and April 13.

The plaintiffs do not seriously dispute the fact that the vast majority of component parts were delivered to the Debtor's warehouse well before the Debtor moved into it. Nevertheless, they maintain that clear issues exist as to what goods were actually ordered by the Debtor and as to when those goods were actually "received" by the Debtor in order to calculate the reclamation period. In the plaintiffs' view, First Software's reliance on the dates that component parts were delivered, seriously confounds the issue because the contracts

between the parties called for the installation of a "system" and, although the plaintiffs fulfilled their obligations to deliver goods to First Software, First Software never actually-"received" the goods—the completed and installed computerized conveyor and paperless retrieval system—until April 18, 1986. In other words, the plaintiffs, relying on a title concept, maintain that receipt requires that the buyer obtain title to the goods. Indeed, the plaintiffs unequivocally state that "[t]he issues [sic] as to when title to this system passed is the most important factor in the case at hand." Since title to the system only passed when the system was finally installed on April 18, 1986, the plaintiffs argue that the reclamation letters they sent were all timely.

The Court is not unsympathetic to the plaintiffs' unenviable position of standing to lose the full value of the goods and services they faithfully supplied First Software as part of the terms of their respective contracts. However, the Court believes that it is the plaintiffs not the Debtor who are confounding the timeliness of receipt issue in this case. Moreover, even though the plaintiffs may lament the seeming unfairness of being unable to repossess the goods, from the perspective of drafters of the Bankruptcy Code, it would be equally unfair to give these three plaintiffs superior positions to those of other unsecured creditors.

The United States Bankruptcy Appellate Panel for the First Circuit has had the opportunity to examine section 546(c). It found:

> Section 546(c) is clear and unambiguous in its scope and requirements. Any common law or statutory right to reclaim goods sold in the ordinary course of business is contingent upon (the seller) making written demand within ten days of the Debtor's receipt of the goods. This section provides the *exclusive remedy* for a creditor attempting to reclaim such goods.

*In re Koro Corp.*, 20 B.R. 241, 242–43 (1st Bankr.App.1982) (citations and footnote omitted); *see also In re L.T.S., Inc.* 32 B.R.

907 (Bankr.D.Idaho 1983); *In re Kentucky Flush Door Corp.*, 28 B.R. 808 (Bankr.W.D.Ky.1983); *In re Contract Interiors, Inc.*, 14 B.R. 670 (Bankr.E.D.Mich.1981). According to the court in *In re Contract Interiors, Inc.*:

> section 546(c) was adopted in an attempt to resolve the problems created by a section 2–702(2). The legislative history states that the purpose of section 546(c) is to 'recognize, in part, the validity of section 2–702 of the Uniform Commercial Code which has generated much litigation, confusion and divergent decisions in different circuits.' H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 372 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5873, 6328.... The legislative history accompanying section 546(c), when read in conjunction with section 546(c), makes it clear that the drafters intended to retain only that part of section 2–702 which permits reclamation if demand was made for the return of the goods within ten days after receipt and to make this right to reclaim exclusive in order to put an end to the disruptive litigation engendered by section 2–702.

14 B.R. at 673–74 (footnote omitted).

■ Although 546(c) is an exclusive remedy, it is helpful to turn to the Uniform Commercial Code for guidance. Section 2–702 of the Uniform Commercial Code does not refer to title; it refers to receipt. M.G.L. c. 106, § 2–103 provides that "... unless the context otherwise requires ... (c) 'receipt' of goods means taking physical possession of them." Furthermore, M.G.L. c. 106, § 2–401 provides: "Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies *irrespective of title to the goods* except where the provision refers to such title." (emphasis supplied).

■ The plaintiffs insist that the phrase, "unless the context otherwise requires" somehow applies (the Court is un-

sure as to how or what) to warrant this Court's drawing a distinction between delivery and receipt and interjecting the concept of title into the simple definition of receipt. The Court declines the plaintiffs' invitation to contort the plain meaning of the Bankruptcy Code and the Uniform Commercial Code sections just cited. Indeed, to do so would invite exactly the same type of disruptive litigation that the drafters of section 546(c) sought to avoid. Furthermore, the Court is unpersuaded by the decisions cited by the plaintiffs, particularly in view of the fact that they do not construe either section 546(c) of the Bankruptcy Code or section 2–702 of the Uniform Commercial Code. As a consequence, the Court finds that with respect to virtually all the goods delivered by Conveyco and Extended and all the goods delivered by Brodie, the reclamation letters were untimely.

In view of this decision and the representations of counsel that agreement is possible with respect to the return of the few goods delivered by the plaintiffs to First Software within the reclamation period, it is unnecessary for the Court to address the issue of the sufficiency of the reclamation letters of Conveyco and Extended. Accordingly, summary judgment is entered in favor of First Software and against the plaintiffs with respect to all counts of the complaint. The Debtor is hereby ordered to return the items identified as being delivered within the reclamation period to the appropriate plaintiff as soon as practicable.

SO ORDERED.