A96A0432. EASTMAN CUTTING ROOM SALES CORPORATION
v. OTTENHEIMER & COMPANY, INC.
(472 SE2d 494)

BIRDSONG, Presiding Judge.

Eastman Cutting Room Sales Corporation appeals a judgment, following a bench trial, in favor of Ottenheimer & Company, Inc., on Eastman's claim under OCGA § 11-2-702 ("Seller's remedies on discovery of buyer's insolvency") for reclamation of equipment sold to Ottenheimer.

After the trial, the trial court found that under an agreement between Eastman and Ottenheimer, Eastman began delivery of the equipment in question in February 1995, the last delivery was made on May 26, 1995, and the equipment was fully installed by June 28, 1995. The trial court further found that on July 2, 1995, Eastman demanded reclamation of the property pursuant to OCGA § 11-2-702, that Eastman did not perfect a security interest in the property, and that Ottenheimer did not make any misrepresentation of solvency within the three months before the property was delivered.

The trial court also found that all of the equipment was received by Ottenheimer within the meaning of OCGA § 11-2-702 (2) on or before May 26, 1995, when Eastman delivered the equipment and Ottenheimer took possession of it. Thus, the trial court found that Eastman's demand for reclamation on July 2, 1995, was not made within ten days of delivery of the equipment and denied Eastman's complaint for reclamation.

This appeal followed. Eastman alleges that the trial court erred by holding that Ottenheimer received all of the equipment in question on or before May 26, 1995, by finding that Eastman's demand for reclamation was untimely, and by holding that Eastman was not entitled to reclamation of the equipment under OCGA § 11-2-702 (2). *Held*:

Under OCGA § 9-11-52 (a) the findings of trial courts in non-jury trials "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." " 'Thus, in cases of this nature, the trial judge sits as trier of fact, and his findings are analogous to the verdict of a jury and should not be disturbed if there is any evidence to support them.' " (Citation omitted.) *Safeway Ins. Co. v. Holmes*, 194 Ga. App. 160, 161 (390 SE2d 52).

Review of the transcript shows evidence to support the trial court's findings. No witness testified that any equipment was delivered after May 26, 1995, and other witnesses testified that except for the final equipment that was delivered on May 26, the equipment was in place in March 1995. Under this evidence the findings of the trial court cannot be disturbed.

Moreover, we find the trial court's determination that the equipment was delivered by May 26 fully consistent with OCGA § 11-2-103 (1) (c) ("receipt" means taking physical possession of goods) and OCGA § 11-2-401 (2) (title passes on physical delivery). Statutes are to be construed in accordance with their real intent and meaning (*Johnson v. Housing Auth. of Atlanta*, 198 Ga. App. 816, 817 (403 SE2d 97)), and should be read according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. *Burbridge v. Hensley*, 194 Ga. App. 523, 524 (391 SE2d 5).

Accordingly, we find no error.

*Judgment affirmed. Blackburn, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur because the evidence does not demand a finding that receipt did not occur until installation was complete. The seller seeks to enforce the remedy provided by OCGA § 11-2-702 (2): "Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt. . . ." In this article on sales, "receipt" of goods means taking physical possession of them. OCGA § 11-2-103 (1) (c).

Seller Eastman had a contract for sale and installation of some industrial equipment. It was one entire contract, not separate contracts for equipment and installation; it merely itemized the various components of the agreement, including a $5,000 charge for installation which was then credited as a discount. Seller was to provide installers and operator training. Did buyer Ottenheimer take "physical possession" before the machinery was fully installed?

Eastman claims "receipt" did not occur until June 28, when the final technician was at the buyer's place of business and pushed the button to make the machinery operational. Eastman cites *Fleming v. Runyan*, 571 S2d 1213 (Ala. Civ. App. 1990), and *In re First Software Corp.*, 72 BR 403 (Bkrtcy. D. Mass. 1987).

Ottenheimer, on the other hand, relies on *Stone v. Nolan*, 171 Ga. App. 644 (320 SE2d 781) (1984), and *Cotton States Mut. Ins. Co. v. Gomez*, 192 Ga. App. 76 (383 SE2d 567) (1989), although these cases do not include installation as part of the contract; they involved motor vehicles, so it is easy to see when "receipt" and "physical custody" occurred. Buyer also cites *In re Rawson Food Svc.*, 846 F2d 1343, 1347 (11th Cir. 1988).

If "receipt" means when title passed, then OCGA § 11-2-401 (2) is relevant, i.e., "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." Appellant says this did not occur until installation was complete but

that even if this were not so, the parties had an express agreement that "receipt" would occur at that event because installation is part of the contract, so the contract "explicitly" provides "otherwise."

I agree with what the majority author wrote in another case: "We believe uniform codes ought to be interpreted uniformly." *B & P Lumber Co. v. First Nat. Bank of Atlanta*, 147 Ga. App. 762, 764 (2) (250 SE2d 505) (1978). But I find nothing directly on the point in issue here. *In re First Software Corp.*, cited by Eastman, is the only case I have found interpreting the requirement in UCC § 2-702 (2) that the seller make a demand to reclaim goods within ten days after the buyer's "receipt." It involved a related provision of the federal Bankruptcy Code which also allows a seller to reclaim goods sold to a debtor by making a demand before ten days after receipt of such goods by the debtor. 11 USC § 546 (c) (1). The debtor had ordered goods from the sellers, which the sellers installed in the debtor's warehouse. After the sellers completed installation and demanded payment, the debtor filed a bankruptcy petition.

The Bankruptcy Court held that the ten-day reclamation period began to run upon the sellers' delivery of the goods to the debtor, thereby rejecting the sellers' argument that the period began to run when title passed to debtor upon sellers' installation of the goods. In so holding, the court found it helpful to turn to the UCC for guidance. It noted that § 2-702 refers to receipt rather than title, that § 2-103 (1) (c) states that "receipt" means taking physical possession of the goods, and that § 2-401 states that each provision of Article 2 with regard to the rights and remedies of the seller applies irrespective of title to the goods except when the provision refers to such title. The court held that acceptance of the sellers' argument would contort the plain meaning of the Bankruptcy Code and the cited UCC sections.

Eastman in its contract makes a distinction between "delivery" (which is arguably the seller's side of "receipt") and "installation." Forty thousand dollars is due "on delivery" (which is one event) and payments are due to begin 30 days after "installation" (which apparently means another event). Payment of $50,000, approximately one-third of the purchase price, by "delivery," would also indicate buyer was taking physical possession of the goods then, rather than not until installation was complete. In *Fleming*, supra, the seller was not entitled to payment until he installed the fixtures.

Under UCC § 2-401 (2), title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods "[u]nless otherwise explicitly agreed." It also states that each provision of Article 2 with regard to the rights, obligations, and remedies of the seller and buyer applies "irrespective of title to the goods except where the provision refers to such title."

Thus it is clear that the seller completes his performance with reference to the physical delivery of the goods when he delivers the goods prior to completion of installation. Delivery is the other side of the coin from receipt.

Buyer was allowing this expensive equipment to be physically delivered and installed (and was using some of it with loaner parts which seller supplied) even in the month up until it turned all of its assets over to an assignee for the benefit of its creditors, because of its financial trouble. The seller first got word of the buyer's financial collapse the same day its employees finished final installation. Now it all is available for other creditors, and the court must hold that the seller acted too late to reclaim it free of other creditors' demands.

DECIDED JUNE 6, 1996 — ▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*John F. McClellan, Jr.*, for appellant.
*Shaw, Maddox, Graham, Monk & Boling, James D. Maddox*, for appellee.